**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ERIK LAWRENCE, RACHEL M. FRANTZ, and MARIE MEZILE, individually and on behalf of all others similarly situated, | : : : : : |
| | : **CLASS ACTION COMPLAINT** |
| Plaintiffs, | : : **CIVIL ACTION NO. 1:21-cv-05748** |
| v. | : : |
| NURTURE, INC., | : **JURY TRIAL DEMANDED** : |
| Defendant. | : : |

### CLASS ACTION COMPLAINT

Plaintiffs, on behalf of themselves and all others similarly situated, bring this class action suit for damages and injunctive relief for purchasers of Baby Food Products (as defined herein) that Nurture, Inc. ("Nurture") marketed and sold without disclosing that they were tainted with arsenic, lead, cadmium, and mercury ("Toxic Heavy Metals") at levels above what is considered safe for babies. Plaintiffs allege the following based upon personal information as to allegations regarding themselves, on the investigation of their counsel, and on information and belief as to all other allegations.

### BACKGROUND

1.      On February 4, 2021, the Subcommittee on Economic and Consumer Policy of the U.S. House of Representatives (the "Subcommittee") released a Report[1] concluding that baby

---

[1] Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury, Staff Report ("Report"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, U.S. House of Representatives, at 11, February 4, 2021, available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

food manufacturers, including Nurture, sold Baby Food Products containing concentrations of inorganic arsenic, lead, cadmium, and mercury at levels above what is considered safe for babies.

2.      Nurture does not disclose the Toxic Heavy Metal content of its foods on its labels or in its marketing materials, nor does it warn consumers that its Baby Food Products may contain potentially dangerous levels of Toxic Heavy Metals.

3.      Plaintiffs and the Class members purchased Baby Food Products manufactured and sold by Nurture, unaware that Nurture's products potentially contain Toxic Heavy Metals at levels well above what is considered safe for babies. Had Nurture disclosed the Toxic Heavy Metal content on its product labels, or otherwise warned that its products could contain levels of Toxic Heavy Metals considered unsafe, neither Plaintiffs nor any other reasonable consumer would have purchased Nurture's products.

4.      Plaintiffs bring this class action on their own behalf and on behalf of other purchasers of Nurture's' Baby Food Products,[2] to seek refunds and all other economic losses suffered as a result of their purchases of Nurture's Baby Food Products, as well as injunctive relief.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(d). The amount in controversy in this class action exceeds $5,000,000, exclusive of interest and costs, and there are numerous Class members who are citizens of states other than Nurture's state of citizenship, and more than two-thirds of the Class members reside in states other than the

---

[2] The term "Baby Food Products" refers to Baby Food Products that contain Toxic Heavy Metals, including Baby Food Products purchased by Plaintiffs. Plaintiffs reserve the right to amend this definition as their investigation continues and they have had an opportunity to conduct discovery.

state in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C.

§1332(d)(2) do not apply.

6.      This Court has personal jurisdiction over Nurture in this matter. Nurture is

headquartered in the State of New York. Moreover, Nurture has been afforded due process

because it has, at all times relevant to this matter, individually or through its agents, subsidiaries,

officers and/or representatives, operated, conducted, engaged in and carried on a business

venture in this state, and/or marketed, advertised, distributed and/or sold products, and caused

injuries to a Plaintiff and Class Members in New York.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Nurture

transacts substantial business and/or has agents within this District and has intentionally availed

itself of the laws and markets within this District.

## PARTIES

8.      Plaintiff Erik Lawrence is a resident of the State of Georgia.  Mr. Lawrence

purchased Baby Food Products made by Defendant Nurture.

9.      Plaintiff Rachel M. Frantz is a resident of the State of Michigan. Ms. Frantz

purchased Baby Food Products made by Defendant Nurture.

10.     Plaintiff Marie Mezile is a resident of the State of New York. Ms. Mezile

purchased Baby Food Products made by Defendant Nurture.

11.     Defendant Nurture, Inc. is a Delaware corporation with corporate headquarters in

New York, New York. Nurture does business as HappyFamily Organics and sells Baby Food

Products under the HappyBABY brand. Nurture's baby food products are sold and purchased

throughout the United States.

# FACTS

A.   Nurture Touts the Quality and Safety of Its Baby Food Products.

12.   Few things are as precious as babies are to their parents and other caretakers. Consumer research from The Nielsen Company shows that the "big three" attributes buyers look for in a baby food product are a trusted brand, good infant nutrition, and the safety of the products for consumption by children.[3]

13.   Consumers expect that baby food manufacturers will regard their children's health and safety as paramount concerns when it comes to formulating their products, sourcing their ingredients, and testing for safety, and that manufacturers will be transparent in their labeling and marketing about what goes into their Baby Food Products.[4]

14.   Unsurprisingly, Nurture touts its Baby Food Products as being tested as safe for babies, in compliance with government regulations, and as containing only safe ingredients. For example, on its website, Nurture touts the "Quality & Safety of Our Products" and claims it "only sell products that have been rigorously tested and we do not have products in-market with contaminant ranges outside of the limits set by the FDA."[5]

15.   However, Nurture's statements and marketing are incomplete, misleading and deceptive with respect to the existence and concentrations of Toxic Heavy Metals in its products.

---

[3] OH, BABY! Trends in the Baby Food and Diaper Markets Around the World, at 17 (The Nielsen Company, August 2015) https://www.nielsen.com/wp-content/uploads/sites/3/2019/04/Global20Baby20Care20Report20Revised20FINAL-2.pdf (accessed March 1, 2021).
[4] *Id.*
[5] https://www.happyfamilyorganics.com/quality-and-safety-of-our-products/.

16.     Nurture knows that Plaintiffs and the other Class members lack the scientific knowledge and resources necessary to test or assess whether the Baby Food Products they purchase contain levels of Toxic Heavy Metals exceeding levels that are safe for babies.

B.      <u>Nurture Sold Baby Food Products Tainted by Toxic Heavy Metals</u>.

17.     Scientists and child development experts have long known that childhood exposure to Toxic Heavy Metals can cause a number of adverse neurological, cognitive, and other developmental consequences. Many of these changes are irreversible, including permanent losses in IQ, memory, and comprehension, as well as ADHD and behavioral problems that persist into adulthood and result in reduced earning capacity.

18.     The FDA cautions that Toxic Heavy metals have "no established health benefit" and "even low levels of harmful metals from individual food sources, can sometimes add up to a level of concern."[6]

19.     There is no level of Toxic Heavy Metal exposure that is considered acceptable for babies. Child advocacy organizations such as Healthy Babies Bright Futures recommends a goal of "no measurable amount" of Toxic Heavy Metals in Baby Food Products.[7]

20.     In November 2019, the Subcommittee sought internal testing records and other documents from several baby food manufacturers, including Nurture, to investigate concerns about heavy metals in baby foods.

---

[6] Report, pp. 9-10 (quoting "Food and Drug Administration, Metals and Your Food" (online at www.fda.gov/food/chemicals-metals- pesticides-food/metals-and-your-food) (accessed Jan. 26, 2021)).

[7] Report, pp. 13, 21, 29, &32) (citing Healthy Babies Bright Futures, *What's in My Baby's Food? A National Investigation Finds 95 Percent of Baby Foods Tested Contain Toxic Chemicals That Lower Babies' IQ, Including Arsenic and Lead* (Oct. 2019) (online at www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf).

21.     Based on this investigation, the Subcommittee concluded that "commercial baby foods contain dangerous levels of arsenic, lead, mercury, and cadmium."[8]

22.     The Subcommittee further found that baby food manufacturers "knowingly sell these products to unsuspecting parents, in spite of internal company standards and test results, and without any warning labeling whatsoever."[9]

23.     The Subcommittee observed that in many cases, Nurture released products for sale even after its test results showed concentrations of Toxic Heavy Metals exceeding its own internal goal thresholds.[10]

24.     **Inorganic Arsenic.** Regulation of inorganic arsenic in baby food is limited. According to the Subcommittee Report, the FDA has set a maximum allowable level of 10 parts per billion (ppb) for both bottled and tap water; however, there "is no established safe level of inorganic arsenic consumption for babies."[11]

25.     The Subcommittee found that Nurture "sells products even after testing confirms that they are dangerously high in inorganic arsenic."[12] Over 25% of the end products Nurture tested and sold contained inorganic arsenic levels exceeding Nurture's own internal goal level of 100 ppb, more than half contained levels exceeding 50 ppb, and over 78% tested at 9 ppb or more.[13]

---

[8] Report, p. 59.
[9] *Id.*
[10] Report, p. 34.
[11] Report, p. 13.
[12] Report, p. 14.
[13] Report, p. 15.

26.    **Lead.**  While there are no Federal standards for lead in baby foods, the Subcommittee found "a growing consensus among health experts that lead levels in baby foods should not exceed 1 ppb."[14]

27.    The Subcommittee found that Nurture sold Baby Food Products testing as high as 641 ppb, and that nearly 20% of the finished Baby Food Products that Nurture tested and sold contained levels of lead over 10 ppb.[15]

28.    **Cadmium.** While there are no federal standards for cadmium in baby foods, the Subcommittee identified proposed and existing cadmium standards including 5 ppb for drinking water (FDA and EPA).[16]

29.    The Subcommittee found that 65% of Nurture's finished Baby Food Products contained more than 5 ppb cadmium.[17]

30.    **Mercury.**  There are also no federal standards for Mercury in baby foods. The EPA limits mercury in drinking water to 2 ppb."[18]

31.    According to the Subcommittee, Nurture sold finished Baby Food Products containing as much as 10 ppb mercury, and as many as 56 products containing over 2 ppb mercury.[19]

32.    The concentrations of Toxic Heavy Metals reflected in Nurture's own test results and as reported by the Subcommittee showed Nurture is knowingly selling Baby Food Products and using ingredients that contain potentially dangerous levels of Toxic Heavy Metals.

---

[14] Report, p. 21.
[15] Report, pp. 22-23.
[16] Report, p. 29.
[17] Report, p. 31.
[18] Report, p. 32.
[19] Report, p. 32.

C.      Plaintiffs and other Class Members Were Harmed.

33.     Prior to the release of the Subcommittee Report, Plaintiffs and each member of the proposed Classes purchased one of more Baby Food Products manufactured and sold by Nurture, intending for them to be fed to children and believing that they were of high quality and safe for children to consume. Plaintiffs were unaware that Nurture would sell Baby Food Products that contained undisclosed dangerous levels of Toxic Heavy Metals.

34.     Based on Nurture's product labeling and marketing materials, Plaintiffs did not expect, and no reasonable consumer would have expected, that any of Nurture's Baby Food Products contained Toxic Heavy Metals at unsafe levels.

35.     Had Plaintiffs and the other Class members known that Nurture was selling Baby Food Products containing Toxic Heavy Metals above levels considered safe for their infants as revealed in the Subcommittee Report, they never would have purchased Nurture's Baby Food Products.

36.     Upon learning that Nurture's Baby Food Products potentially contain Toxic Heavy Metals at levels considered unsafe for children, Plaintiffs no longer believed the Nurture's Baby Food Products were quality products or safe for consumption by babies and children.

## CLASS ACTION ALLEGATIONS

37.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23, individually and as representatives of all those similarly situated, on behalf of a proposed nationwide class defined as: All persons in the United States who purchased Nurture's Baby Food Products (the "National Class"). Excluded from the Class are Nurture, its present and former parent companies, subsidiaries and affiliates, federal governmental entities and

instrumentalities of the federal government, states and their subdivisions, agencies, and instrumentalities, and purchasers for resale.

38.     Plaintiff Lawrence also brings this action pursuant to Federal Rule of Civil Procedure 23, individually and as representative of all those similarly situated, on behalf of a proposed Georgia class defined as: All persons who purchased Nurture's Baby Food Products in the State of Georgia (the "Georgia Class"). Excluded from the Class are Nurture, its present and former parent companies, subsidiaries and affiliates, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies, and instrumentalities, and purchasers for resale.

39.     Plaintiff Frantz also brings this action pursuant to Federal Rule of Civil Procedure 23, individually and as representative of all those similarly situated, on behalf of a proposed Michigan class defined as: All persons who purchased Nurture's Baby Food Products in the State of Michigan (the "Michigan Class"). Excluded from the Class are Defendants, their present and former parent companies, subsidiaries and affiliates, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies, and instrumentalities, and purchasers for resale.

40.     Plaintiff Mezile also brings this action pursuant to Federal Rule of Civil Procedure 23, individually and as representative of all those similarly situated, on behalf of a proposed New York class defined as: All persons who purchased Nurture's Baby Food Products in the State of New York (the "New York Class"). Excluded from the Class are Defendants, their present and former parent companies, subsidiaries and affiliates, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies, and instrumentalities, and purchasers for resale.

41.     The members of each of the Classes are so numerous that their individual joinder is impracticable. On information and belief, members of each of the Classes number in the tens or hundreds of thousands. The precise number of members of each of the Classes and their addresses are presently unknown to Plaintiffs but may be ascertained from grocery and other records. Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

42.     Common questions of law and fact exist as to all members of each Class and predominate over questions affecting only individual Class members. Such common questions of law or fact include:

    a.    Whether Nurture's Baby Food Products contain Toxic Heavy Metals at levels higher than what is considered safe for babies;

    b.    Whether Nurture misrepresented to Plaintiffs and the Class members that its Baby Food Products were safe for consumption by babies and did not contain potentially unsafe levels of Toxic Heavy Metals;

    c.    Whether Nurture omitted and concealed the fact that its Baby Food Products contained Toxic Heavy Metals higher than levels considered safe for babies;

    d.    Whether the presence of Toxic Heavy Metals in Nurture's Baby Food Products was a material fact to Plaintiff and Class members;

    e.    Whether Defendants' conduct violated Georgia's Fair Business Practices Act or Uniform Deceptive Trade Practices Act;

    f.    Whether Defendants' conduct violated Michigan's Consumer Protection Act;

    g.    Whether Nurture's conduct violated New York's Deceptive Acts and Practices Act or False Advertising Act;

    h.    Whether Nurture breached express or implied warranties to Plaintiff and the Class members; and

      i.      Whether Nurture's conduct resulted in Nurture unjustly retaining a benefit to the detriment of Plaintiffs and Class members, and violated the fundamental principles of justice, equity, and good conscience.

43.    Plaintiffs' claims are typical of the claims of the other members of the Classes, because, among other things, Plaintiffs and all Class members suffered the same type of injury, namely, paying for a product that they otherwise would not have purchased had Nurture disclosed the presence of Toxic Heavy Metals in its Baby Food Products. Further, there are no defenses available to Nurture that are unique to Plaintiffs.

44.    Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members they seek to represent, they have retained counsel competent and experienced in class action litigation, and they and their counsel will prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

45.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other members of the Classes individually are relatively small compared to the burden and expense that would be required to separately litigate their claims against Nurture, so it would be uneconomical and impracticable for Class members to individually seek redress for Nurture's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**COUNT I**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the National Class and Each State Class)**

46.     Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

47.     This cause of action is brought on behalf of each of the Classes against Nurture.

48.     In connection with its sale of Baby Food Products, by and through statements in labels, publications, package inserts, and other written materials intended for consumers and the general public, Nurture made certain express affirmations of fact and/or promises relating to its Baby Food Products to Plaintiffs and the Classes, as alleged herein, including that such Baby Food Products were safe for consumption by infants and fit to be used for their intended purpose. These express affirmations of fact and/or promises include incomplete warnings and instructions that purport, but fail, to include the risks associated with use of Baby Food Products containing Toxic Heavy Metals.

49.     Nurture advertised, labeled, marketed, and promoted Baby Food Products with such express affirmations of fact and/or promises in such a way as to induce their purchase or use by Plaintiffs and the Classes, thereby making an express warranty that Baby Food Products would conform to the representations.

50.     Nurture's affirmations of fact and/or promises about Baby Food Products, as set forth herein, constituted affirmations of fact or promises made by the seller to the buyer, which related to the goods and became part of the basis of the bargain.

51.     Despite the express warranties Nurture created with respect to Baby Food Products, Nurture delivered Baby Food Products to Plaintiffs and the Classes that did not conform to Nurture's express warranties in that such Baby Food Products were defective, dangerous, and unfit for use, did not contain labels adequately representing the nature of the risks associated with their use, and were not merchantable or safe for their intended, ordinary, and foreseeable use and purpose. Specifically, Nurture breached the express warranties by representing through its labeling, advertising, and marketing materials that its Baby Food Products were safe, and intentionally withheld information about the contents and risks associated with use of the Baby Food Products.

52.     Nurture had sole access to material facts concerning the nature of the risks associated with its Baby Food Products, as expressly stated on their labels, and knew that consumers and purchasers such as Plaintiffs could not have reasonably discovered that the risks expressly included in Baby Food Products' labels or other statements about its Baby Food Products were inadequate and inaccurate. Plaintiffs and each member of the Classes have had sufficient direct dealings with either Nurture or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Nurture, on the one hand, and Plaintiffs and each member of the Classes, on the other hand.

53.     As a direct and proximate result of Nurture's breaches of express warranties, as alleged herein, Plaintiffs and the Classes sustained an economic loss in an amount to be proven at trial.

54.     As a result of Nurture's breaches of express warranties, as alleged herein, Plaintiffs and the Classes seek an order awarding compensatory damages and any other just and proper relief available under the law.

## COUNT II
## BREACH OF IMPLIED WARRANTY
### (On Behalf of the National Class and Each State Class)

55.     Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

56.     This cause of action is brought on behalf of the each of the Classes against Nurture.

57.     At all relevant times, Nurture was a merchant with respect to Baby Food Products that were sold to Plaintiffs and members of the Classes and was in the business of selling such products.

58.     Each Baby Food Product sold by Nurture comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used.

59.     Nurture breached its implied warranty of merchantability because its Baby Food Products were not in merchantable condition when sold.

60.     Nurture's Baby Food Products are not fit for the ordinary purpose for which they were sold because they contain Toxic Heavy Metals.

61.     Plaintiffs and members of the Classes were injured as a direct and proximate result of Nurture's breaches of implied warranties of merchantability. Plaintiffs and members of the Classes were damaged as a result of Nurture's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of the Baby Food Products, they would not have purchased such products.

62.     As a result of Nurture's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Classes seek an order awarding compensatory damages and any other just and proper relief available under the law.

## COUNT III
## UNJUST ENRICHMENT
### (On Behalf of the National Class and Each State Class)

63. Plaintiffs incorporate the allegations in the preceding paragraphs as though fully set forth herein.

64. This cause of action is brought on behalf of each of the Classes against Nurture.

65. Nurture intended and expected that, as a result of its knowing wrongful acts as alleged above, Nurture would profit and benefit from sales of Baby Food Products that would otherwise have not occurred.

66. Nurture voluntarily accepted and retained these profits and benefits, knowing full well that Plaintiffs and the other Class members received Baby Food Products that were not of a quality level that reasonable purchasers expect of foods intended for babies.

67. Nurture has been unjustly enriched by its wrongful and deceptive withholding of benefits to its customers at the expense of Plaintiffs and the Class members.

68. Principles of equity and good conscience preclude Nurture from retaining these profits and benefits.

69. As a direct and proximate result of Nurture's unjust enrichment, Plaintiffs and the Class members suffered injury and seek an order compelling Nurture to disgorge and return to Plaintiffs and the Class members the amounts that each Class member paid to Nurture.

## COUNT IV
## VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT
### (GA. CODE ANN. §10-1-390, ET SEQ.)
### (On Behalf of the Georgia Class)

70. Plaintiff Lawrence incorporates the allegations in the preceding paragraphs as though fully set forth herein.

71. This cause of action is brought on behalf of the Georgia Class against Nurture.

72.     Nurture, Plaintiff, and the Georgia Class members are "[p]erson[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(24).

73.     Plaintiff and the Georgia Class members are "[c]onsumer[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(6).

74.     Nurture was and is engaged in "[t]rade" and "commerce" within the meaning of Ga. Code Ann. §10-1-392(a)(28).

75.     The Georgia Fair Business Practices Act ("Georgia FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce." Ga. Code Ann. §10-1-393(a).

76.     The Georgia FBPA makes unlawful specific acts, including:

    a.     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Ga. Code Ann. §10-1-393(b)(5));

    b.     "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another" (Ga. Code Ann. §10-1-393(b)(7)); and

    c.     "[a]dvertising goods or services with intent not to sell them as advertised" (Ga. Code Ann. §10-1-393(b)(9)).

77.     In the course of its business Nurture, through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts that its Baby Food Products contained Toxic Heavy Metals at unsafe levels that rendered them unfit to be used for their intended purpose, as detailed above.

78.     Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts regarding Baby Food Products, as detailed above,

Nurture engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Georgia FBPA, including:

      a.      representing that the Baby Food Products have characteristics, uses, benefits, and qualities which they do not have;

      b.      representing that the Baby Food Products are of a particular standard, quality, and grade when they are not;

      c.      advertising the Baby Food Products with the intent not to sell them as advertised; and

      d.      engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

79. Nurture's misrepresentations and omissions regarding its Baby Food Products were disseminated to Plaintiff and the Georgia Class members in a uniform manner.

80. Specifically, Nurture's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, or suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Georgia Class members, that the Baby Food Products are considered safe for consumption by babies.

81. The facts regarding Baby Food Products that Nurture knowingly and intentionally misrepresented, omitted, concealed, or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Georgia Class members, who consider such facts to be important to their purchase decisions with respect to Baby Food Products.

82. Plaintiff and the Georgia Class members had no way of discerning that Nurture's representations were false and misleading, or otherwise learning the facts that Nurture had

17

concealed or failed to disclose. Plaintiff and the Georgia Class members did not, and could not, overcome Nurture's deception on their own.

83.     Nurture had an ongoing duty to Plaintiff and the Georgia Class members to refrain from unfair or deceptive practices under the Georgia FBPA in the course of its business. Specifically, Nurture owed Plaintiff and Georgia Class members a duty to disclose all the material facts concerning Toxic Heavy Metals in Baby Food Products because it possessed exclusive knowledge, it intentionally failed to disclose the Toxic Heavy Metal content of Baby Food Products to Plaintiff and the Georgia Class members, and/or it made representations that were rendered misleading because they were contradicted by known but withheld facts.

84.     Plaintiff and the Georgia Class members were aggrieved by Nurture's violations of the Georgia FBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Nurture's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding Baby Food Products, including that such Baby Food Products contained Toxic Heavy Metals at levels above those considered safe for consumption by babies and not fit to be used for their intended purpose. Specifically, Plaintiff and the Georgia Class members purchased Baby Food Products in reliance on Nurture's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Baby Food Products. Had Nurture not engaged in the deceptive acts and practices alleged herein, Plaintiff and other Georgia Class members would not have purchased the Baby Food Products, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

85.     Nurture's violations present a continuing risk to Plaintiff and the Georgia Class members, as well as to the general public. Nurture's unlawful acts and practices complained of herein affect the public interest.

86.     Nurture was provided notice of the issues raised in this count and this Complaint by the Subcommittee Report and other lawsuits filed against it.

87.     Because Nurture failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiff seeks all damages and relief to which Plaintiff and the Georgia Class members are entitled.

88.     As a result of Nurture's violations of the Georgia FBPA, as alleged herein, Plaintiff and the Georgia Class members seek an order enjoining Nurture's unfair or deceptive acts or practices and awarding actual damages and any other just and proper relief available under the Georgia FBPA.

## COUNT V
## VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (GA. CODE ANN. §10-1-370, *ET SEQ.*)
### (On Behalf of the Georgia Class)

89.     Plaintiff Lawrence incorporates the allegations in the preceding paragraphs as though fully set forth herein.

90.     This cause of action is brought on behalf of the Georgia Class against Nurture.

91.     Nurture, Plaintiff, and the Georgia Class members are "[p]erson[s]" within the meaning of Ga. Code Ann. §10-1-371(5).

92.     The Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA") prohibits "deceptive trade practices . . . in the course of [a] business, vocation, or occupation." Ga. Code Ann. §10-1-372(a).

93.     The Georgia UDTPA makes unlawful specific acts, including:

    a.     "[r]epresent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Ga. Code Ann. §10-1-372(a)(5));

b.  "[r]epresent[ing] that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another" (Ga. Code Ann. §10-1-372(a)(7));

c.  "[a]dvertis[ing] goods or services with intent not to sell them as advertised" (Ga. Code Ann. §10-1-372(a)(9)); and

d.  "[e]ngag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding" (Ga. Code Ann. §10-1-372(a)(12)).

94.   In the course of its business Nurture, through its agents, employees, and/or subsidiaries, violated the Georgia UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts regarding Baby Food Products, as detailed above.

95.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts regarding Baby Food Products, as detailed above, Nurture engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Georgia UDTPA, including:

a.  representing that the Baby Food Products have characteristics, uses, benefits, and qualities which they do not have;

b.  representing that the Baby Food Products are of a particular standard, quality, and grade when they are not;

c.  advertising the Baby Food Products with the intent not to sell them as advertised; and

d.  engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

96.   Nurture's misrepresentations and omissions regarding Baby Food Products were disseminated to Plaintiff and the Georgia Class members in a uniform manner.

97.   Nurture's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, or suppressions of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiff and the Georgia Class members,

about the true nature of Baby Food Products.

98.     The facts regarding Baby Food Products that Nurture knowingly and intentionally

misrepresented, omitted, concealed, or failed to disclose would be considered material by a

reasonable consumer, and they were, in fact, material to Plaintiff and the Georgia Class

members, who consider such facts to be important to their purchase decisions with respect to

Baby Food Products.

99.     Plaintiff and the Georgia Class had no way of discerning that Nurture's

representations were false and misleading, or otherwise learning the facts that Nurture had

concealed or failed to disclose. Plaintiff and the Georgia Class did not, and could not, learn of

Nurture's deception on their own.

100.     Nurture had an ongoing duty to Plaintiff and the Georgia Class to refrain from

unfair or deceptive practices under the Georgia UDTPA in the course of its business.

Specifically, Nurture owed Plaintiff and the Georgia Class a duty to disclose all the material facts

concerning Toxic Heavy Metals in Baby Food Products because it possessed exclusive

knowledge, it intentionally concealed or failed to disclose the facts regarding its Baby Food

Products from Plaintiff and the Georgia Class, and/or it made misrepresentations that were

rendered misleading because they were contradicted by withheld facts.

101.     Plaintiff and the Georgia Class were aggrieved by Nurture's violations of the

Georgia UDTPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Nurture's knowing and intentional misrepresentations, omissions,

concealments, or failures to disclose material facts regarding Baby Food Products, including that

such Baby Food Products contained unsafe levels of Toxic Heavy Metals. Specifically, Plaintiff and the Georgia Class purchased Baby Food Products in reliance on Nurture's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Baby Food Products. Had Nurture not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Georgia Class would not have purchased the Baby Food Products, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

102.    Nurture's violations present a continuing risk to Plaintiff and the Georgia Class, as well as to the general public. Nurture's unlawful acts and practices complained of herein affect the public interest.

103.    Nurture was provided notice of the issues raised in this count and this Complaint by the Subcommittee Report and other lawsuits filed against it.

104.    As a result of Nurture's violations of the Georgia UDTPA, as alleged herein, Plaintiff and the Georgia Class seek an order enjoining Nurture's unfair or deceptive acts or practices, awarding damages, and awarding any other just and proper relief available under the Georgia UDTPA.

## COUNT VI
### VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT
### (MICH. COMP. LAWS ANN. §445.901, *ET SEQ.*)
### (On Behalf of the Michigan Class)

105.    Plaintiff Frantz incorporates the allegations in the preceding paragraphs as though fully set forth herein.

106.    This cause of action is brought on behalf of the Michigan Class against Nurture.

107.    Nurture, Plaintiff, and the Michigan Class members are "[p]erson[s]" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(d).

108.     Nurture was and is engaged in "[t]rade" or "commerce" within the meaning of Mich. Comp. Laws Ann. §445.902(1)(g).

109.     The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws Ann. §445.903(1).

110.     The Michigan CPA makes unlawful specific acts, including:

a.     "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Mich. Comp. Laws Ann. §445.903(1)(c));

b.     "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Mich. Comp. Laws Ann. §445.903(1)(e)); and

c.     "[a]dvertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented" (Mich. Comp. Laws Ann. §445.903(1)(g)).

111.     In the course of its business Nurture, through its agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts regarding Toxic Heavy Metals in Baby Food Products.

112.     Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts regarding Toxic Heavy Metals in Baby Food Products, Nurture engaged in one or more unfair or deceptive business practices prohibited by the Michigan CPA, including:

a.     representing that the Baby Food Products have characteristics, uses, benefits, and qualities which they do not have;

b.     representing that the Baby Food Products are of a particular standard, quality, and grade when they are not;

c.      advertising the Baby Food Products with the intent not to sell them as
advertised; and

d.      engaging in any other unconscionable, false, misleading, or deceptive act
or practice in the conduct of trade or commerce.

113.    Nurture's misrepresentations and omissions regarding the levels of Toxic Heavy

Metals in its Baby Food Products were disseminated to Plaintiff and the Michigan Class in a

uniform manner.

114.    Nurture's unfair or deceptive acts or practices, including its misrepresentations,

concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiff and the Michigan Class, about the

contents of the Baby Food Products.

115.    The facts regarding Toxic Heavy Metals in Baby Food Products that Nurture

knowingly and intentionally misrepresented, omitted, concealed, or failed to disclose would be

considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and

the Michigan Class, who consider such facts to be important to their purchase decisions with

respect to Baby Food Products.

116.    Plaintiff and Michigan Class had no way of discerning that Nurture's

representations were false and misleading, or otherwise learning the facts that Nurture had

concealed or failed to disclose. Plaintiff and the Michigan Class did not, and could not, discover

Nurture's deception and concealment on their own.

117.    Nurture had an ongoing duty to Plaintiff and the Michigan Class to refrain from

unfair or deceptive practices under the Michigan CPA in the course of its business. Specifically,

Nurture owed Plaintiff and the Michigan Class a duty to disclose all the material facts

concerning the presence of Toxic Heavy Metals in Baby Food Products because it possessed exclusive knowledge, it intentionally concealed the presence of the Toxic Heavy Metals from Plaintiff and the Michigan Class, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

118.    Plaintiff and the Michigan Class were aggrieved by Nurture's violations of the Michigan CPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Nurture's knowing and intentional misrepresentations, omissions, concealments, or failures to disclose material facts regarding Toxic Heavy Metals in Baby Food Products.

119.    Specifically, Plaintiff and the Michigan Class purchased Baby Food Products in reliance on Nurture's misrepresentations, omissions, concealments, or failures to disclose material facts regarding Toxic Heavy Metals in Baby Food Products. Had Nurture not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Michigan Class would not have purchased the Baby Food Products, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

120.    Nurture's violations present a continuing risk to Plaintiff and the Michigan Class, as well as to the general public. Nurture's unlawful acts and practices complained of herein affect the public interest.

121.    As a result of Nurture's violations of the Michigan CPA, as alleged herein, Plaintiff and the Michigan Class seek an order enjoining Nurture's unfair or deceptive acts or practices and awarding actual damages and any other just and proper relief available under the Michigan CPA.

## COUNT VII
### VIOLATION OF THE NEW YORK DECEPTIVE ACTS AND PRACTICES ACT
### (N.Y. GEN. BUS. LAW §349)
### (On Behalf of the New York Class Against Nurture)

122.    Plaintiff Mezile incorporates the allegations in the preceding paragraphs as though fully set forth herein.

123.     This cause of action is brought on behalf of the New York Class against Nurture.

124.    Plaintiff and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349(h). Nurture is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law §349(b).

125.    The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §349(a).

126.    In the course of its business, Nurture, directly or through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclosure material facts regarding Toxic Heavy Metals in their Baby Food Products, as detailed above.

127.    Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclosure material facts regarding Toxic Heavy Metals in its Baby Food Products, as detailed above, Nurture engaged in one or more of deceptive acts or practices in the conduct of trade or commerce, in violation of the New York DAPA.

128.    Nurture's misrepresentations and omissions regarding the unsafe nature of Baby Food Products were disseminated to Plaintiff and the Class members in a uniform manner.

129.    Nurture's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or

26

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiff and the Class members about the

nature of Baby Food Products.

130.    The facts regarding Baby Food Products that Nurture knowingly and intentionally

misrepresented, omitted, concealed, or failed to disclose would be considered material by a

reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who

consider such facts to be important to their purchase decisions with respect to Baby Food

Products.

131.    Plaintiff and Class members had no way of discerning that Nurture's

representations were false and misleading, or otherwise learning the facts that Nurture had

concealed or failed to disclose. Plaintiff and Class members did not, and could not, discover

Nurture's deception on their own.

132.    Nurture had an ongoing duty to Plaintiff and the Class members to refrain from

unfair and deceptive practices under the New York DAPA in the course of its business.

Specifically, Nurture owed Plaintiff and Class members a duty to disclose all the material facts

regarding Baby Food Products, including that such products contained unsafe levels of Toxic

Heavy Metals, because it possessed exclusive knowledge, it intentionally concealed the facts

regarding Baby Food Products, including that such products contained unsafe levels of Toxic

heavy metals and/or it made misrepresentations that were rendered misleading because they were

contradicted by withheld facts.

133.    Plaintiff and the Class members were aggrieved by Nurture's violations of the

New York DAPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Nurture's knowing and intentional misrepresentations, omissions,

concealments, or failures to disclose material facts regarding Baby Food Products, including that such products contained unsafe levels of Toxic Heavy Metals and thus were not fit to be used for their intended purpose. Specifically, Plaintiff and the Class members purchased Baby Food Products in reliance on Nurture's misrepresentations, omissions, concealments, or failures to disclose material facts regarding Baby Food Products. Had Nurture not engaged in the deceptive acts and practices alleged herein, Plaintiff and Class members would not have purchased Nurture's Baby Food Products, and, thus, they did not receive the benefit of the bargains and/or suffered out-of-pocket loss.

134.    Nurture's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public. Nurture's unlawful acts and practices complained of herein affect the public interest.

135.    As a result of Nurture's violations of the New York DAPA, as alleged herein, Plaintiff and the Class members seek an order enjoining Nurture's unfair or deceptive acts or practices and awarding actual damages and any other just and proper relief available under the New York DAPA.

**COUNT VIII**
**VIOLATION OF THE NEW YORK FALSE ADVERTISING ACT**
**(N.Y. GEN. BUS. LAW §350)**
**(On Behalf of the New York Class Against Nurture)**

136.    Plaintiff Mezile incorporates the allegations in the preceding paragraphs as though fully set forth herein.

137.    This cause of action is brought on behalf of the New York Class against Nurture.

138.    Nurture was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law. §350.

139.     The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade, or commerce." N.Y. Gen. Bus Law §350. False advertising includes "advertising, including labeling, of a commodity…if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of …representations [made] with respect to the commodity." N.Y. Gen. Bus. Law §350-a (1).

140.     Nurture caused to be made or disseminated through New York and the United States, through labels, advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known to Nurture, to be untrue or misleading to consumers, including Plaintiff and the Class members.

141.     In the course of its business, Nurture, directly or through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts regarding Toxic Heavy Metals Baby Food Products, as detailed above.

142.     Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclosure material facts regarding unsafe levels of Toxic Heavy Metals in its Baby Food Products, as detailed above, Nurture engaged in false advertising in violation of the New York FAA.

143.     Nurture's misrepresentations and omissions regarding Toxic Heavy Metals in its Baby Food Products were disseminated to Plaintiff and the Class members in a uniform manner.

144.     Nurture's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, or suppressions of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiff and the Class members, about the

unsafe nature of Baby Food Products.

145.    The facts regarding Baby Food Products that Nurture knowingly and intentionally

misrepresented, omitted, concealed, or failed to disclose would be considered material by a

reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who

consider such facts to be important to their purchase decisions with respect to Baby Food

Products.

146.    Plaintiff and Class members had no way of discerning that Nurture's

representations were false and misleading, or otherwise learning the facts that Nurture had

concealed or failed to disclose. Plaintiff and Class members did not, and could not, discover

Nurture's deception on their own.

147.    Nurture had an ongoing duty to Plaintiff and the Class members to refrain from

false advertising under the New York FAA in the course of its business. Specifically, Nurture

owed Plaintiff and Class members a duty to disclose all the material facts regarding Baby Food

Products, as described above, because it possessed exclusive knowledge, and it intentionally

concealed or failed to disclose the facts regarding unsafe levels of Toxic Heavy Metals in its

Baby Food Products and/or it made misrepresentations that were rendered misleading because

they were contradicted by withheld facts.

148.    Plaintiff and the Class members were aggrieved by Nurture's violations of the

New York FAA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Nurture's knowing and intentional misrepresentations, omissions,

concealments, or failures to disclose material facts regarding Toxic Heavy Metals in its Baby

Food Products. Specifically, Plaintiff and the Class members purchased Baby Food Products in reliance on Nurture's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Baby Food Products. Had Nurture not engaged in the deceptive acts and practices alleged herein, Plaintiff and Class members would not have purchased Nurture's Baby Food Products, and thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

149.    Nurture's violations present a continuing risk to Plaintiff and the Class members, as well as to the general public. Nurture's unlawful acts and practices complained of herein affect the public interest.

150.    As a result of Nurture's violations of the New York FAA, as alleged herein, Plaintiff and the other New York Class members seek an order enjoining Nurture's unfair or deceptive acts or practices and awarding actual damages and any other just and proper relief available under the New York FAA.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek a judgment against Nurture, as follows:

a.    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Classes as set forth above and appointing Plaintiffs' attorneys as Class Counsel;

b.    For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

c.    For an order enjoining Nurture from selling Baby Food Products until the higher and/or unsafe levels of Toxic Heavy Metals are removed or full disclosure of the presence of Toxic Heavy Metals appears on all labels, packaging, and advertising;

d.    For an order enjoining Nurture from selling Baby Food Products while in any manner suggesting or implying that they are healthy, nutritious, and

safe for consumption;

e.   For an order requiring Nurture to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

f.   For damages in amounts to be determined by the Court and/or jury;

g.   For prejudgment interest on all amounts awarded;

h.   For an order of restitution and all other forms of equitable monetary relief; and

i.   For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

Dated: July 2, 2021                                    Respectfully submitted,


/s/ *Zahra R. Dean*
Zahra R. Dean (5554191)
Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
Craig W. Hillwig
Aarthi Manohar
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 238-1700
zdean@kohnswift.com
dabrahams@kohnswift.com
whoese@kohnswift.com
chillwig@kohnswift.com
amanohar@kohnswift.com

David H. Fink
Nathan J. Fink
**FINK BRESSACK**
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com

Michael L. Roberts
Karen Halbert
**ROBERTS LAW FIRM, P.A.**
20 Rahling Circle
Little Rock, Arkansas 72223
Telephone: (501) 821-5575
mikeroberts@robertslawfirm.us
karenhalbert@robertslawfirm.us

*Attorneys for Plaintiffs*